UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SHERLOCKE EVAN F. HOLMES, #147832,

        Petitioner,

v.                         CIVIL ACTION NO. 2:05cv594

GENE M. JOHNSON, Director of the
Virginia Department of Corrections,

        Respondent.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was initiated by petition for a writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Local Civil Rules of the United States District Court for the Eastern District of Virginia.

## I. STATEMENT OF THE CASE

### A. Background

On April 16, 1986, Petitioner, Sherlocke Evan F. Holmes ("Holmes"), pled guilty in the Circuit Court for the City of Virginia Beach ("Virginia Beach Circuit Court"), Virginia, to five (5) counts of forgery, five (5) counts of uttering, five (5) counts of grand larceny, and one (1) count of failure to turn in rental property. On June 4, 1986, Holmes was sentenced to a total of eighty (80) years in prison, of which sixty (60) years were

suspended.  Holmes did not appeal this conviction.

On July 23, 1986, the Circuit Court for the City of Norfolk ("Norfolk Circuit Court"), Virginia, sentenced Holmes to five (5) years in prison for forgery, to run concurrent with the Virginia Beach sentences.

On September 21, 1992, Holmes was released on parole.  On December 4, 1994, Holmes was arrested for parole violations and additional charges.

On June 21, 1995, Holmes was convicted in the Norfolk Circuit Court for fraud and grand larceny.  Holmes was sentenced to five (5) years in prison, with two (2) years, six (6) months suspended, for fraud, and fifteen (15) years, with ten (10) years suspended, for grand larceny.  Both of these sentences were to run concurrently with Holmes' other sentences.

On October 4, 1995, Holmes was convicted in the Virginia Beach Circuit Court to one (1) count of embezzlement, two (2) counts of uttering, four (4) counts of forgery, and two (2) counts of fraud. Holmes was sentenced to two (2) sentences of fifteen (15) years, with six (6) years suspended on each sentence, and six (6) sentences of five (5) years.  All of these sentences were to run concurrently with Holmes' other sentences.

On February 26, 1996, Holmes' parole was revoked, requiring him to serve the unserved time from his 1986 Virginia Beach convictions.  This amounted to nine (9) years, eight (8) months,

and sixteen (16) days of time to be served.

On or about July 31, 2001, Holmes filed a <u>pro se</u> Motion for Judgement [sic] in the Circuit Court for the City of Staunton ("Staunton Circuit Court"), Virginia, naming several prison officials as defendants and alleging they conspired against him to deny his Good Conduct Allowance ("GCA") credits, by falsely accusing Holmes of several disciplinary infractions, and by removing "verification of [Holmes'] high school credentials" from his file.   On January 11, 2002, the Staunton Circuit Court dismissed Holmes' motion as barred by the defendants' sovereign immunity.   <u>Holmes v. Smith</u>, No. CL00-108 (Va. Cir. Ct. Jan. 11, 2002) ("<u>Holmes I</u>").   On April 4, 2002, Holmes filed his appeal from the Staunton Circuit Court's dismissal, with the Supreme Court of Virginia.   On June 21, 2002, the Supreme Court of Virginia refused the appeal because the court found "there [was] no reversible error in the judgment complained of."   <u>Holmes v. Smith</u>, No. 020918 (Va. June 21, 2002) ("<u>Holmes II</u>").

Holmes next filed a petition for writ of habeas corpus in the Norfolk Circuit Court ("State Habeas Petition I"),[1] asserting that several employees of the Staunton Correctional Center had conspired to remove documentation of Holmes' "high school credentials" from

---

[1]The Court requested Respondent to provide Holmes' court records.   Respondent provided this Court with the Norfolk Circuit Court's opinion, but apparently the Norfolk Circuit Court no longer has a copy of Holmes' petition.   Consequently, this Court was unable to determine the date on which Holmes filed that petition.

his record, causing his GCA level, calculated in his March 8, 2001, annual review, to be incorrect. <u>Holmes v. Johnson</u>, No. CR950185F03/F95 (Va. Cir. Ct. Oct. 1, 2003) ("<u>Holmes Habeas I</u>"). The Norfolk Circuit Court dismissed this petition.[2] On October 10, 2003, Holmes noted his appeal ("Appeal of State Habeas Petition I") to the Supreme Court of Virginia.[3]  On March 17, 2004, the Supreme Court of Virginia refused the appeal because the court found "there [was] no reversible error in the judgment complained of." <u>Holmes v. Johnson</u>, No. 032740 (Va. Mar. 17, 2004) ("<u>Holmes Habeas I Appeal</u>").

On December 13, 2004, Holmes filed a petition for a writ of habeas corpus in the Supreme Court of Virginia ("State Habeas Petition II").[4]  On June 10, 2005, relying upon an affidavit from

---

[2]The court held that Holmes was afforded the process set forth in the applicable statutes and regulations regarding calculation of his classification level, and that his claim was not timely filed pursuant to Va. Code Ann. § 8.01-654A.2, because it was not brought within one (1) year after the alleged cause of action accrued.  The court also held that Holmes was not denied a liberty interest in his conditional release because such an interest does not accrue until the expiration of a valid sentence, and Holmes was not entitled to relief on his claim that the Virginia Department of Corrections was supporting a for-profit prison, because that was not a cognizable claim in habeas.

[3]This appeal alleged essentially the following errors:
(1) The trial court erred in failing to adjudicate Holmes' claim.
(2) The trial court erred in dismissing the pleading as time barred.
(3) The trial court erred in holding that Holmes failed to state a claim under habeas.

[4]The petition contained one claim:
    Petitioner is being unlawfully detained by

the Virginia Department of Corrections ("VDOC"), the Supreme Court of Virginia dismissed this petition, holding that it was without merit because Holmes' "total sentence, good conduct allowance credit, and release date ha[d] been accurately computed in accordance with Virginia law."  <u>Holmes v. Director</u>, No. 042808 (June 10, 2005) ("<u>Holmes Habeas II</u>").

On September 13, 2005, while in the custody of the Virginia Department of Corrections at the Augusta Correctional Center,[5] Holmes executed the instant federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Federal Petition").[6]  The

<div style="margin-left:2em">

virtue of on-going computation of Good Conduct Allowances on sentences that were completed[,] pursuant to Virginia Code § 53.1-159, on or about October 19, 1988[,] and November 20, 1990, respectively, impairing the Commonwealth's obligation of contracts, liberty interested [sic] Due Process, Equal Protection, and Expost [sic] facto law prohibitions of the United States and Virginia Constitutions, as well as the prohibition against Bill of Attainder [sic] laws set forth in Article I of the United States Constitution and Article IV, §14 of the Constitution of Virginia.

</div>

State Habeas Petition II, at 3.  In his response to Respondent's Motion to Dismiss that petition, Holmes claimed that Virginia's practices for calculating sentences violated the "separation of powers" doctrine, due process liberty interests, the cruel and unusual punishment clause, and prohibitions against Bills of Attainder.

[5]On December 1, 2005, the Court was notified that Holmes was moved to the Powhatan Correctional Center, where he is presently confined.

[6]This petition was accompanied by a request to proceed <u>in forma pauperis</u> dated September 14, 2005.  Holmes indicated on the petition that it was being provided to prison officials for mailing

Court conditionally filed this petition on October 7, 2005. On November 2, 2005, the Court entered an Order granting Holmes' request to proceed _in forma pauperis_, and filing his petition. On December 21, 2005, Respondent filed a Motion to Dismiss accompanied by a supporting memorandum and a Notice of Motion Pursuant to Local [Civil] Rule 7(K). On January 11, 2006, the Court received and filed, subject to defect,[7] Petitioner's Response to Respondent's Motion Pursuant to Local [Civil] Rule 7(K), Motion to Dismiss and

---

on September 14, 2005. The petition was postmarked September 27, 2005, was received by the United States District Court for the Eastern District of Virginia, Richmond, on September 29, 2005, and was conditionally filed with this Court on October 7, 2005. On October 17, 2005, this Court requested Holmes' prisoner account report. This Court received that report on October 28, 2005.

The Court notes that the United States Supreme Court promulgated certain amendments to the Rules Governing Section 2254 Cases in the United States District Courts, which became effective on December 1, 2004. As amended, Rule 3(d) adopts the prison mailbox rule with regard to § 2254 petitions. Accordingly, the Court recognizes the prison mailbox rule for federal habeas petitions. In this case, as there is no evidence in the record to the contrary, the Court will assume that Holmes delivered his federal habeas petition for mailing on the date entered on the petition, September 14, 2005. Further, the Court considers Holmes' petition as filed, for statute of limitations purposes, on that date.

On November 18, 2005, the Court received Petitioner's Affidavit and Chronology of Relevant Facts, which had been executed on November 14, 2005. On November 22, 2005, the Court entered an Order filing this document as a supplement to the petition, and allowing Respondent an extension of time until December 22, 2005, to respond to Holmes' petition.

[7]This pleading was not signed. On January 18, 2006, the Court entered an Order advising Holmes he had thirty (30) days in which to resubmit the document with an original signature and a signed certificate of service. On January 30, 2006, the Court received and filed the signed pleading and certificate of service.

Memorandum in Support ("Holmes' Response").

## B. Grounds Alleged

Holmes now asserts in this Court that he is entitled to relief under 28 U.S.C. § 2254 for the reasons substantially as follows:

(1) Defendant misapplied Virginia codes and violated due process in calculating his sentences;

(2) Defendant violated Holmes' due process liberty interest by the deliberate falsification of Holmes' conduct records to deprive him of his full GCA credits;

(3) The Allen Administration created a "for-profit" prison with the intent to deprive inmates of due process;

(4) Defendant conspired to retaliate against Holmes for exercising his right to access to the courts, and for filing grievances;

(5) Defendant breached his contract with Holmes by holding Holmes beyond his "crystalized" expectation of release;

(6) Holmes' incarceration, since March 17, 2005, violates Holmes' right to be free from <u>ex post facto</u> laws;

(7) Holmes' incarceration, since March 17, 2005, violates the prohibition against Bills of Attainder;

(8) Defendant's continued incarceration of Holmes has inflicted unnecessary pain resulting in cruel and unusual punishment; and

(9) The term of parole supervision Holmes will be forced to serve violates his rights to equal protection of the laws.

## II. <u>PETITIONER'S MOTION FOR AN EVIDENTIARY HEARING</u>

As a preliminary matter, the Court considers Holmes' request

for an evidentiary hearing.  <u>See</u> Holmes' Response, at 4.  The Court

has determined that an evidentiary hearing is not required, as

purely legal issues are presented and the record before the Court

adequately resolves the legal issues raised.  <u>See</u> Rule 8 of the

Rules Governing Section 2254 Cases.  Accordingly, the Court DENIES

Holmes' motion for an evidentiary hearing.

### III.  <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

The Court FINDS that all of Holmes' claims are exhausted,

requiring review on the merits.[8]

### A.  <u>Exhaustion</u>

In order for this Court to address the merits of this habeas

petition, all of Holmes' claims must be exhausted.  <u>See</u> 28 U.S.C. §

2264(a); 28 U.S.C. § 2254(b).  The exhaustion requirement is

satisfied when "allegations advanced in federal court . . . [are]

the same as those advanced at least once to the highest state

court."  <u>Pruett v. Thompson</u>, 771 F. Supp. 1428, 1436 (E.D. Va.

1991), <u>aff'd</u> 996 F.2d 1560 (4th Cir. 1993).  Exhaustion may be

accomplished either on direct appeal or in post-conviction

proceedings.  <u>See</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844 (1999)

(citing <u>Brown v. Allen</u>, 344 U.S. 443, 447 (1953)); <u>see also</u> <u>Skipper</u>

---

[8]The Court notes that Respondent has not addressed whether
Holmes' petition was timely filed.  Because Holmes' petition does
not attack the underlying convictions, and because the record shows
that Holmes learned of the underlying facts for his various claims
at different times, the Court will address any applicable statute
of limitations calculations in its analysis, <u>infra</u>, of the relevant
claim.

v. French, 130 F.3d 603, 610 n.4 (4th Cir. 1997).  In order for a claim to be considered exhausted, it must be "fairly presented to the state courts," which means "that both the operative facts and the controlling legal principles must be presented to the state court."  Matthews v. Evatt, 105 F.3d 907, 910-11 (4th Cir. 1997) (internal quotations omitted).  "[T]he exhaustion requirement for claims not fairly presented to the state's highest court is technically met when . . . a state procedural rule would bar consideration if the claim was later presented to the state court," Matthews, 105 F.3d at 911 (citations omitted); such claims are treated as procedurally defaulted and barred from this Court's review.  Clagett v. Angelone, 209 F.3d 370, 378-79 (4th Cir. 2000).

Respondent avers that Holmes has not exhausted claims (4) through (9) because they were not considered by the Supreme Court of Virginia.  Memorandum in Support of Respondent's Motion to Dismiss, at 3 ("Respondent's Memorandum").  Respondent concedes that claim (1) was exhausted in State Habeas Petition II, and claims (2) and (3) were exhausted in Appeal of State Habeas Petition I.  Id. at 2-3.  The Court, therefore, finds that claims (1) through (3) were exhausted through presentation to the Supreme Court of Virginia as state habeas claims.  See O'Sullivan, 526 U.S. at 844.

Holmes asserts that claim (4) was raised in his habeas petition submitted to the Norfolk Circuit Court.  Federal Petition,

9

at 11.[9]  The Court agrees and finds this claim was presented in that petition, and consequently, raised on appeal to the Supreme Court of Virginia through Appeal of State Habeas Petition I. Consequently, the Court finds the claim is exhausted.  <u>See</u> <u>O'Sullivan</u>, 526 U.S. at 844.

Holmes asserts that claim (5) was raised in his Motion for Judgement [sic] under the Virginia Tort Claims act, as well as in his two (2) state habeas petitions.  Federal Petition, at 12a-12b. The Court notes that the claim presented directly to the Supreme Court of Virginia in State Habeas Petition II, asserted breach of contract.  Consequently, this claim was exhausted.  <u>See</u> <u>O'Sullivan</u>, 526 U.S. at 844.

Holmes asserts that claim (6) was raised in both of his state habeas petitions.  Federal Petition, at 12c-12d.  The Court finds that the claim presented directly to the Supreme Court of Virginia in State Habeas Petition II asserted violation of the right to be free from <u>ex post facto</u> laws.  Consequently, this claim was exhausted.  <u>See</u> <u>O'Sullivan</u>, 526 U.S. at 844.

Holmes asserts that claim (7) was raised in both of his state habeas petitions.  Federal Petition, at 12e.  The Court finds that

---

[9]The Court notes that Holmes has attached a memorandum to his federal petition form, within which he labels the pages with numbers preceded by the letter "M."  The Court will follow this convention by using numbers without a prefix to refer to pages of the petition form, and numbers preceded by the letter "M" to refer to pages within the memorandum.

the claim presented directly to the Supreme Court of Virginia in State Habeas Petition II asserted violation of the prohibition against Bills of Attainder.   Consequently, this claim was exhausted.  <u>See</u> <u>O'Sullivan</u>, 526 U.S. at 844.

Holmes asserts that claim (8) was raised in both of his state habeas petitions.  Federal Petition, at 12f-12g.  The Court finds that Holmes' response to Respondent's Motion to Dismiss State Habeas Petition II added assertions of cruel and unusual punishment in support of the claim presented in that state petition. Consequently, this claim was exhausted.  <u>See</u> <u>O'Sullivan</u>, 526 U.S. at 844.

Holmes asserts that claim (9) was raised in both of his state habeas petitions.  Federal Petition, at 12h-12i.  The Court finds that the claim presented directly to the Supreme Court of Virginia in State Habeas Petition II asserted violation of equal protection. Consequently, this claim was exhausted.  <u>See</u> <u>O'Sullivan</u>, 526 U.S. at 844.

Because the Court FINDS that all of Holmes' claims were exhausted, the petition is not mixed, and the Court must address the claims on the merits.  <u>See</u> <u>Pruett</u>, 771 F. Supp. at 1436.

## B.  **Merits**

The Court now considers Holmes' claims on the merits.   A federal court may not grant relief on a habeas claim previously adjudicated on the merits in state court unless that adjudication:

11

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d).  In drafting this statute, Congress "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000).  See also Bell v. Jarvis, 236 F.3d 149, 157 (recognizing that, for claims adjudicated on the merits by the state court, the federal court "is limited by the deferential standard of review set forth in § 2254(d), as interpreted by the Supreme Court in Williams[].")  Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 387.  Moreover, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." Id. at 411.  In deference to the state court's decision, this Court may not grant relief unless it determines that decision on the

12

merits was "legally or factually unreasonable." See Bell, 236 F.3d at 163 (quoting Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999)).

### 1.  Claim (3)

Because the majority of Holmes' claims relate to sentencing, the Court first considers Holmes' claim (3), the only claim not related to sentencing.  This claim asserts that during the administration of Governor George Allen, Virginia's Governor from 1994 to 1998 ("the Allen Administration"), the Allen Administration "false[ly] and fraudulent[ly] developed a for profit component of VDOC, for individual and collective gain."  The Court determined, supra, that this claim was exhausted in the Appeal to State Habeas Petition I, and first looks to that opinion for the state court's resolution of this claim.  Because that opinion was a summary dismissal of Holmes' claims, this Court must "look through" the Supreme Court of Virginia's summary dismissal to the Norfolk Circuit Court's opinion.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991).  In that opinion, the Norfolk Circuit Court dismissed this claim because it did "not state a claim in habeas." Holmes Habeas I, at 2.  This Court agrees and declines to consider this claim because it does not assert that Holmes "is in custody in violation of the Constitution or laws or treaties of the United States."  See 28 U.S.C. § 2254(a).  The Court also notes that the Allen Administration ended in 1998, so this claim is necessarily

13

time-barred.  <u>See</u> 28 U.S.C. § 2244(d)(1).  To the extent that
Holmes claims that the Allen Administration created policies that
continue to violate due process and other constitutional
provisions,[10] <u>see</u> Federal Petition, at M14, the Court will address
those policies and the related allegations, <u>infra</u>.  Having found
that claim (3) does not state a claim in habeas, and is time
barred, this Court RECOMMENDS claim (3) be denied.

## 2.  Sentence-related subclaims

The remainder of Holmes' claims essentially provide various
legal theories attacking the calculation of his GCA credits and the
length of his sentences.  Underlying these claims are what the
Court construes as various subclaims that allege different ways
Holmes' sentence has been miscalculated.  Because these subclaims
are repeated throughout several of Holmes' claims, and because some
of these subclaims are time-barred, assert violations of state law,
are moot, and/or are unsupported by the record, in the interest of
efficiency, the Court will first address each of these subclaims so
as to eliminate those that are without merit.  The Court will then
move to the claims and legal theories as set forth in Holmes'
petition to resolve any remaining issues.

---

[10]Holmes specifically asserts in the instant petition that the
Norfolk Circuit Court misunderstood this claim, and that his actual
claim "was and continues to be . . . that both Virginia Department
of Corrections and Virginia Parole Board changed policies,
practices, and procedures to uniformly attach [']NO PAROLE['] to
all inmates and thereby disguise and hide their for profit
component of the VDOC endeavors."  Federal Petition, at M14.

The subclaims Holmes has asserted throughout his petition relating to sentencing are:

(a) Holmes is being held in prison beyond the expiration of his court-imposed sentences. Further, he has not been credited with completing any of the sentences that were imposed in 1986.

(b) The completion dates for Holmes' sentences, both those completed prior to his release on parole, and those completed since his parole was revoked, were calculated incorrectly because they were not each reduced by the required six (6) months associated with mandatory parole.

(c) Holmes' GCA credits earned prior to his release on parole were unlawfully rescinded when his parole was later revoked.

(d) Holmes was denied thirty (30) points for "Education," toward his GCA classification level, because documentation that he completed high school was removed from his file.

(e) Prison officials made false accusations of misconduct in order to reduce Holmes' GCA classification level.

**a.  Holmes has served more than his court-imposed sentences**

The Court first addresses Holmes' general subclaim that he is being held past the expiration of his court-imposed sentences. E.g., Federal Petition, at M15. In dismissing Holmes' second state habeas claim, the Supreme Court of Virginia primarily relied on an affidavit provided by Doris L. Ewing, Senior Manager of Court and Legal Services for VDOC ("Ewing Affidavit"). This affidavit showed that Holmes' 1986 conviction resulted in four (4) consecutive five-year (active) sentences. Ewing Affidavit, at 2. Further, the affidavit provided the date on which Holmes completed each of those and clearly stated that Holmes is currently serving only the 1995

15

sentence.[11]  See id. at 2-5.

As of the date of the Ewing Affidavit, January 21, 2005, Holmes was projected to complete his nine-year sentence from 1995, on April 29, 2008.  Id. at 5.  This would result in his serving seven (7) years, three (3) months, and fourteen (14) days of actual time to satisfy that sentence.  Consequently, Holmes' assertion that he is being required to serve a term longer than that to which he was sentenced is contrary to the record before this Court.  See Federal Petition, at M15.

**b.  Holmes' four (4) sentences from 1986 have not been reduced by the six (6) month credit associated with mandatory parole**

The Court next addresses Holmes' subclaim that the completion dates for Holmes' sentences were not properly reduced by the required six (6) months associated with mandatory parole.  E.g., Federal Petition, at 24.  As stated, supra, note 11, Holmes completed two (2) of his five-year sentences from 1986, prior to his release on parole on September 21, 1991.  Therefore, the Court

---

[11]According to the affidavit, as a result of GCA credits, Holmes served three (3) years, nine (9) months, and five (5) days of actual time to satisfy the first five-year term.  See Ewing Affidavit, at 2-3.  Similarly, Holmes served two (2) years, eight (8) months, and six (6) days of actual time to satisfy the second five-year term.  See id. at 3.  At the point when Holmes was released on parole, he had served fifty-two (52) days of his third five-year term.  See id. at 3.  Adding those fifty-two (52) days to the time Holmes served after his parole was revoked, Holmes served three (3) years and fourteen (14) days of actual time to satisfy the third five-year term.  See id. at 4-5.  Holmes then served three (3) years, two (2) months, and sixteen (16) days of actual time to satisfy his fourth five-year term.  See id. at 5.

finds, Holmes' claim as to any miscalculation of those two (2) sentences is clearly time barred under 28 U.S.C. § 2244(d)(1)(D), because Holmes should have become aware of the "factual predicate of the claim" prior to September 21, 1992, the date on which he was paroled. Holmes did not begin petitioning the courts for any review of his convictions or conditions of imprisonment until almost nine (9) years later on July 31, 2001.[12]

Further, this subclaim primarily asserts a misapplication of Va. Code Ann. §53.1-159. Federal Petition, at M24. To the extent that this subclaim rests on state law, the Supreme Court of Virginia addressed that issue in holding that "[t]he record . . . demonstrates that [Holmes'] total sentence, good conduct allowance credit, and release date have been accurately computed in accordance with Virginia law." Holmes State Habeas II, at 1. This Court cannot consider federal habeas claims that rely solely on allegations that the state court misapplied state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Accordingly, this Court declines to consider any portion of Holmes' claims in which he asserts that VDOC violated Va. Code Ann. § 53.1-159, but this Court will address any federal grounds relating to this subclaim and pertaining to the sentences Holmes has been required to serve since

---

[12]By that point, Holmes was already barred from raising this issue via a federal habeas petition, so even if Holmes is credited with tolling for the state filings after that date, the claim in the instant petition would not be rendered timely.

his parole was revoked, <u>infra</u>.

**c. When Holmes' parole was revoked, the GCA credits he had earned prior to his release on parole were improperly revoked**

The Court next addresses Holmes' subclaim that GCA credits earned prior to his release on parole were improperly rescinded when his parole was subsequently revoked.   <u>See e.g.</u>, Federal Petition, at M7.  The Court notes that the Ewing affidavit relied on by the Supreme Court of Virginia in <u>Holmes Habeas I</u> provides a "total cumulative sentence" for Holmes of twenty-nine (29) years, but the affidavit also shows the calculation for each of Holmes' individual sentences, and traces the history showing which sentences have been completed.   Ewing Affidavit, at 2-5.[13] Accordingly, the GCA credits that were used to expedite Holmes' completion of his first two (2) sentences, and to shorten the time remaining on his third sentence prior to his release on parole, could not have been rescinded, because Holmes has only been required to serve the time remaining on his third and fourth five-year terms as of his release on parole.  <u>See id.</u> As a result, the

---

[13]The affidavit shows that Holmes completed the first five-year term on November 23, 1989.  Ewing Affidavit, at 2-3.  The second five-year term was completed on July 30, 1992; Holmes also began serving his third five-year term on that date.  <u>Id.</u>  When Holmes was released for parole on September 21, 1992, he had nine (9) years, eight (8) months, and sixteen (16) days time left to serve on the third and fourth five-year terms.  <u>Id.</u>  When Holmes' parole was revoked, he became required to serve that remaining time.  <u>Id.</u> at 4.  Holmes completed the third five-year term on October 29, 1997, and the fourth five-year term on January 15, 2001.  <u>Id.</u> at 5.  As a result, his current release date is calculated based solely on the time remaining on the nine-year sentence.  <u>Id.</u> at 5.

Court finds that Holmes' assertions within this subclaim are contrary to the record before this Court.

### d. Holmes was denied thirty (30) points for "Education," toward his GCA classification level

The Court next addresses Holmes' subclaim that he was denied thirty (30) points for "Education," toward his GCA classification level because documentation that he completed high school was allegedly removed from his file. Federal Petition, at M8. Holmes asserts the lack of documentation of his high school completion affected his classification level beginning on March 8, 2001, and in support of this claim, he provided "Class Level Evaluation Sheets" dated March 8, 2001, and September 18, 2001, which show Holmes was credited, on both forms, with zero (0) points for "Education" due to "[n]o verification of GED, or High School Diploma."[14]   Federal Petition, at Appendice [sic] K.   The Court

_____

[14]The first form shows that Holmes was moved from "Class Level I" to "Class Level II," effective February 26, 2001. Federal Petition, at Appendice [sic] K. The second form shows that Holmes was moved from "Class Level II" to "Class Level III," effective September 18, 2001. Id. Holmes also provided "Class Level Evaluation Sheets," dated February 26, 1997, February 26, 1998, February 19, 1999, and February 20, 2000, all of which credited him with thirty (30) points, the maximum, for "Education." Id.

Apparently, Holmes was only denied GCA points for "Education" from March, 2001, until March, 2002, and his allegations that he was denied these points "on March 8, 2001 and beyond" was due to the delay until April, 2002, in correcting his records. See Federal Petition, at M8. Holmes did not provide in the instant petition any of his annual review forms dated after 2001, but his complaint form (filed with the prison) alleging miscalculation of his points for his March, 2002, annual review, raises no issues regarding "Education" points. See Federal Petition, at Appendice [sic] I. Further, Holmes admits that between March 8, 2002 and May

19

notes that the Ewing Affidavit makes no specific reference to Holmes' allegation that his education points were incorrectly assigned; the affidavit just generally avers that the GCA credits were calculated correctly.  Ewing Affidavit, at 6.  Accordingly, the Court has reviewed the "Summary Audit," dated December 30, 2004, provided in support of the affidavit.  According to this document, on April 10, 2002, Holmes' classification level for February 26, 2001, was corrected to increase his classification level from II to I, and his classification level for September 18, 2001, was corrected to increase his classification level from III to II.  This April 10, 2002, date is consistent with Holmes' statement that new credentials were received on or about April 16, 2001, but not immediately used to correct his record, Federal Petition, Appendice [sic] L, at 42, and the changes in classification level are consistent with the assignment of an additional thirty (30) points for "Education."  See Federal Petition, at Appendice [sic] H.

Because any error in the calculation of Holmes' GCA classification level based on "Education" credits has been remedied, this claim is no longer "live"; even a favorable decision on it would have no impact on Holmes' remaining sentence.  See Murphy v. Hunt, 455 U.S. 478, 481-82 (1982).  Consequently, the

---

3, 2002, his March 8, 2001 annual review was corrected.  Federal Petition, Appendice [sic] L, at 50-51.

Court finds that this subclaim is now moot.[15]  <u>See id.</u>

### e. **Prison officials made false accusations of misconduct in order to reduce Holmes' GCA classification level**

The Court next addresses Holmes' subclaim that prison officials "conspired" to make false accusations of misconduct in order to reduce his GCA classification level. Federal Petition, at M15. This claim was included in Holmes' second state habeas petition, which was dismissed by the Supreme Court of Virginia as being "without merit." <u>Holmes Habeas II</u>, at 1. This claim was also essentially presented to the Staunton Circuit Court, which found the claim barred by sovereign immunity. <u>Holmes I</u>, <u>aff'd</u>, <u>Holmes II</u>. Because the Supreme Court of Virginia found "no reversible error" in the lower court's dismissal based on sovereign immunity, and since Holmes has presented no facts or case law to challenge that result, Holmes has failed to show that the Supreme Court of Virginia's adjudication of the claim on the merits was factually or legally unreasonable.

Further, this claim was presented in Holmes' first state habeas petition. Because the claim was addressed in detail by the Norfolk Circuit Court in its dismissal of that petition, <u>Holmes Habeas I</u>, this Court construes the Supreme Court of Virginia's

---

[15]The Court notes that because any error in calculating Holmes' "Education" credits has been remedied, Holmes' related claim that this miscalculation was deliberately caused by prison officials' actions does not state a claim in habeas, as it does not affect his confinement. Accordingly, this claim cannot be considered by this Court.

summary dismissal, <u>Holmes Habeas I Appeal</u>, as adopting the Norfolk Circuit Court's reasoning.  <u>See Ylst</u>, 501 U.S. at 803-04 (1991). This reasoning was "that prisoners [do not] have a liberty interest in the placement in a particular Classification level; that the Department of Corrections has the discretion to adjust the earning level at which the prisoner is assigned; [and] that [Holmes] has been afforded the process set forth in the statutes and regulations but disagrees with the level of classification which resulted therefrom." <u>Holmes Habeas I</u>, at 1.  Because Holmes has presented specific federal grounds for challenging this dismissal, the Court will address those grounds within each respective claim, <u>infra</u>.

### 3.  Claim (1)

The Court will now address the remaining specific claims and legal theories as presented in the instant petition. As claim (1), Holmes asserts that VDOC misapplied the Virginia Code in calculating Holmes' sentences and, as a result, violated due process.  Federal Petition, at M4-M8.  This claim was presented to the Virginia Supreme Court, and that court found the entire claim to be "without merit."  <u>Holmes Habeas II</u>, at 1.

As stated, <u>supra</u>, section III.B.2.b, this Court cannot consider claims based solely on misapplication of state law, <u>Estelle</u>, 502 U.S. at 67-68; consequently, the Court declines to consider Holmes' references to Virginia code sections.

To the extent that Holmes alleges violation of due process,

Holmes apparently refers to his subclaim (c), <u>supra</u>, that his GCA credits earned prior to his release on parole were rescinded when his parole was revoked.   <u>See</u> Federal Petition, at M4-M8.   As determined, <u>supra</u>, section III.B.2.c, Holmes' prior GCA credits were not rescinded when his parole was revoked, so there cannot have been a corresponding due process violation.   Further, as discussed, <u>supra</u>, section III.B.2.a, Holmes' claim that he has not been given credit for completing any of his sentences is incorrect, and his current GCA credits are being calculated based solely on the sentence imposed in 1995.

Consequently, Holmes has failed to show that the Supreme Court of Virginia's denial of claim (1) was either factually or legally unreasonable.   As such, this Court RECOMMENDS that claim (1) be denied.

## 4.  Claim (2)

In claim (2), Holmes asserts he was denied "due process of a vested liberty interest - in a crystallized expectation for mandatory parole - by an ongoing criminal conspiracy to deny and deprive him (Petitioner) of consideration of [sic] GCA class[ification] level I, on March 8, 2001, and beyond."[16]   Federal

---

[16]Holmes claims that he was reduced from GCA classification level I, both due to a miscalculation of "Education" credits and due to "false" misconduct charges.   Federal Petition, at M8-M11. The Court has already determined that Holmes' record has been corrected to restore those "Education" credits, and to retroactively increase Holmes to GCA classification level I from March 8, 2001, through September 18, 2001.   <u>See supra</u>, section

Petition, at M8.  The Court construes Holmes to claim that he had a due process liberty interest in remaining in GCA classification level I for the duration of his imprisonment; therefore, he considers his reduction to lower classification levels to be a denial of this "crystallized" expectation.  <u>See id.</u>  As stated, <u>supra</u>, this claim was exhausted by Holmes' first state habeas petition.

Because the Supreme Court of Virginia's adjudication of this claim was a summary dismissal, this Court must "look through" that result to the Norfolk Circuit Court's reasoning.  <u>See Ylst</u>, 501 U.S. at 803-04.  That court held "that prisoners [do not] have a liberty interest in the placement in a particular Classification level; that the Department of Corrections has the discretion to adjust the earning level at which the prisoner is assigned; [and] that [Holmes] has been afforded the process set forth in the statutes and regulations but disagrees with the level of classification which resulted therefrom."  <u>Holmes Habeas I</u>, at 1.

As support for this claim, Holmes cites case law for the proposition that "a sentence [cannot be] enhanced after the defendant has served so much of his sentence that his expectations as to its finality have been crystallized that it would be

---

III.B.2.d.  Accordingly, the Court will only consider Holmes' claim as to his placement in GCA classification levels below level I as of September 18, 2001, to present.

fundamentally unfair to defeat them." Federal Petition, at M12 (citing <u>United States v. Lundien</u>, 769 F.2d 981, 987 (4th Cir. 1985)). The Court notes that each of the cases cited by Holmes in support of this proposition involve a <u>court</u> increasing the term of a prisoner's sentence, not the application of GCA credits by <u>prison officials</u> to reduce the court-determined sentence. <u>See</u> <u>Lundien</u>, 769 F.2d at 987; <u>United States v. Cook</u>, 890 F.2d 672, 675 (4th Cir. 1989); <u>Breest v. Helgemoe</u>, 579 F.2d 95, 101 (1st Cir. 1978). Holmes has not been required, either due to court order or actions by prison officials, to serve a term of imprisonment beyond that imposed by the Norfolk and Virginia Beach Circuit Courts. <u>See</u> <u>supra</u>, section III.B.2.a. Consequently, Holmes has provided no showing that the Norfolk Circuit Court's conclusion that Holmes had no liberty interest in his GCA classification level, and that he was afforded due process in the calculation of that classification level, was either legally or factually unreasonable. Accordingly, this Court RECOMMENDS that claim (2) be denied.

### 5. Claim (4)

In claim (4), Holmes asserts that "VDOC employees and divers others unknown to petitioner, . . . conspired to enhance [Holmes'] term of service on sentences imposed in 1986 and 1995 for exercise of his right to access to the courts." Federal Petition, at M15. As stated, <u>supra</u>, section III.B.2.e, the Court finds this claim was exhausted by presentation in Holmes' first state habeas petition.

25

Accordingly, because the Supreme Court of Virginia's adjudication of that petition was a summary dismissal, this Court must "look through" that result to the Norfolk Circuit Court's reasoning.  See Ylst, 501 U.S. at 803-04 (1991).  That court held "that prisoners [do not] have a liberty interest in the placement in a particular Classification level; that the Department of Corrections has the discretion to adjust the earning level at which the prisoner is assigned; [and] that [Holmes] has been afforded the process set forth in the statutes and regulations but disagrees with the level of classification which resulted therefrom."  Holmes Habeas I, at 1.

In addressing subclaim (a), see supra, section III.B.2.a, the Court found that Holmes' sentences have been calculated correctly, Holmes has completed the sentences that remained when his parole was revoked, and Holmes is currently serving the nine-year sentence imposed in 1995.  See also Ewing Affidavit, at 2-5.  Holmes has provided no facts to call into question the data provided in the Ewing Affidavit or to support his claim.  Further, the Norfolk Circuit Court, see supra, section III.B.3, determined that Holmes was accorded due process in the calculation of his GCA classification levels.  Accordingly, Holmes has failed to demonstrate that the Supreme Court of Virginia's resolution of this claim was either factually or legally unreasonable.  Based on the foregoing this Court RECOMMENDS that claim (4) be denied.

## 6.  Claim (5)

In claim (5), Holmes asserts that his "inferred and statutory contract with the Commonwealth[,] for restituting [sic] society for [Holmes'] multiple violations of Virginia criminal codes and their incumbent sentences, was breached . . . by VDOC employees." Federal Petition, at M16.  This claim was presented to the Supreme Court of Virginia as support for Holmes' claim that his GCA credits were computed incorrectly, and that court found the entire claim to be "without merit."  Holmes Habeas II, at 1.  Holmes appears to assert for this claim that the "contract" that was breached was the Virginia Code, and the "breach" of this contract was due to policy changes by prison officials.  Federal Petition, at M17.  As stated, supra, this Court cannot consider federal habeas claims that rely solely on allegations that the state court misapplied state law. Estelle, 502 U.S. at 67-68.  Further, Holmes has not specified what those policies are, when they went into affect, or how they affected his sentence.  See id. at M17-18.  Consequently, Holmes has failed to show that the Supreme Court of Virginia's result was factually unreasonable.

The Court notes that Holmes specifically asserts that his GCA credits for his pre-parole imprisonment were rescinded due to a policy change, but the Court found, see supra, section III.B.2.c, that such an allegation was not supported by the record, because Holmes' previous GCA credits were not rescinded.  The Court also

27

finds that Holmes has provided no federal law in support of this claim; the majority of Holmes' reasoning asserts a violation of the Virginia Constitution.  The one federal case Holmes cites, <u>Motor Vehicle Manufacturer's Ass'n v. State Farm Mutual Automobile Insurance Co.</u>, 463 U.S. 29 (1983), <u>see</u> Federal Petition, at M16, which addresses whether a government agency's decision to rescind a regulation complied with the Administrative Procedure Act, has no relevance to Holmes' purported breach of contract claim.

Based on the foregoing, this Court FINDS that Holmes has failed to show that the Supreme Court of Virginia either unreasonably determined the facts or unreasonably applied federal law to deny claim (5).  As such, this Court RECOMMENDS that claim (5) be denied.

### 7.  Claim (6)

In claim (6), Holmes asserts that his continued incarceration since March 17, 2005, violates the prohibition against <u>ex post facto</u> laws.  Federal Petition, at M18.  Specifically, Holmes alleges that the Commonwealth's policy change in 1995 to rescind GCA credits in conjunction with parole revocation was an <u>ex post facto</u> law.  Federal Petition, at M21.  This claim was presented to the Supreme Court of Virginia as support for Holmes' claim that his GCA credits were computed incorrectly, and that court found the entire claim to be "without merit."  <u>Holmes Habeas II</u>, at 1.

As discussed, <u>supra</u>, section III.B.2.c, Holmes' GCA credits

earned prior to his release on parole were not rescinded when his parole was revoked. Accordingly, the Court finds this assertion has no merit.[17] The Court finds Holmes' assertion that the removal of his high school records from his file constituted a "new law" also to be without merit, and in any event, any incorrect extension of Holmes' parole release date caused by the lack of those records was cured by the April 10, 2002, correction of his classification levels, as discussed, _supra_, section III.B.3.d.

Based on the foregoing, this Court FINDS that Holmes has failed to show that the Supreme Court of Virginia either unreasonably determined the facts or unreasonably applied federal law to deny claim (6). As such, this Court RECOMMENDS that claim (6) be denied.

### 8. Claim (7)

In claim (7), Holmes asserts that his incarceration since

---

[17]Holmes also asserts that VDOC allegedly performs its GCA computations on the total term of imprisonment, instead of individual sentences, thereby preventing prisoners from benefitting from the six (6) month release on parole provided for in Va. Code Ann. § 53.1-159. Federal Petition, at M24. It is unclear whether Holmes is claiming an _ex post facto_ violation in relation to this law, because elsewhere he asserts that prison officials misinterpreted this statute in not granting him the relevant six (6) month "mandatory parole" credit for the sentences he completed prior to release on parole and, therefore, before the alleged statutory change. In any event, the Court has compared the versions of Va. Code Ann. §53.1-159 in effect prior to and after the 1995 Amendment and finds no substantive changes relating to or supporting Holmes' claim. The Court has already declined to address any misapplications of that state law, which cannot be raised in a federal petition. _See_ _supra_, section III.B.2.b.

March 17, 2005, violates the prohibition against Bills of Attainder.  Federal Petition, at M24.  This claim was presented to the Supreme Court of Virginia as support for Holmes' claim that his GCA credits were computed incorrectly, and that court found the entire claim to be "without merit."  <u>Holmes Habeas II</u>, at 1.

Holmes fails to provide any relevant support for this claim. He states that "[a] statute is considered an unconstitutional Bill of Attainder when it: (1) identifies a specific individual or group, (2) inflicts punishment on that individual or group, and (3) does the above without benefit of a judicial trial."  Federal Petition, at M25 (citing <u>Selective Service System v. Minnesota Public Interest Research Group</u>, 468 U.S. 841, 846-47 (1984)). Holmes alleges that there is a policy change (not enactment of a statute), to rescind GCA credits for prisoners whose parole was revoked, even though the GCA credits were granted under a previous policy that did not provide for them to be rescinded.  Federal Petition, at M27-M28.  The Court finds, however, that because this policy change does not deny prisoners their rights to initial criminal trials and/or parole revocation hearings, it does not fit the requirements to be a Bill of Attainder.  <u>See</u> <u>Selective Service System</u>, 468 U.S. at 846-47.  Further, as discussed, <u>supra</u>, section III.B.2.c, Holmes' GCA credits were not rescinded.

Based on the foregoing, this Court FINDS that Holmes has failed to show that the Supreme Court of Virginia either

unreasonably determined the facts or unreasonably applied federal law to deny claim (7).  As such, this Court RECOMMENDS that claim (7) be denied.

### 9.  Claim (8)

In claim (8), Holmes alleges his continued incarceration constitutes "cruel and unusual punishment."  Federal Petition, at 28.  This claim was presented to the Supreme Court of Virginia as support for Holmes' claim that his GCA credits were computed incorrectly, and that court found the entire claim to be "without merit."  Holmes Habeas II, at 1.  In support of this claim, Holmes asserts that the removal of his education records from his file has caused his release date to be improperly extended, causing him "mental and emotional" distress.  Federal Petition, at M32.  As stated, supra, section III.B.2.d, any errors in calculating Holmes' classification levels based on Holmes' education were corrected on April 10, 2002.  Consequently, there is no basis for this claim. See also, supra, note 15.

Holmes also asserts cruel and unusual punishment based on a "conspiracy" at Staunton Correctional Center to "prefer[] bogus infractions [sic]" on Holmes and to otherwise "harass[]" him, which allegedly continued when Holmes was transferred to the Augusta Correctional Center.  Federal Petition, at M32.  To warrant the granting of a writ of habeas corpus, Holmes must assert "[h]e is [currently] in custody in violation of the [United States]

Constitution." 28 U.S.C. § 2241(c)(3). Because Holmes is now housed at the Powhatan Correctional Center, see supra, note 5, his claim regarding his treatment at prior institutions is no longer "live", and is consequently moot. See Murphy, 455 U.S. at 481-81. The cases Holmes cites in support of this claim were concerned with actions that either were brought under 42 U.S.C. § 1983, which provides for different claims and remedies than for habeas, or were brought as habeas claims, but related to imposition of the death penalty. See Wilson v. Seiter, 501 U.S. 294 (1991); Whitley v. Albers, 475 U.S. 312 (1986); Rhodes v. Chapman, 452 U.S. 337 (1981); Hutto v. Finney, 437 U.S. 678 (1978); Coker v. Georgia, 433 U.S. 485 (1977); Gregg v. Georgia, 428 U.S. 153 (1976).

Based on the foregoing, Holmes has failed to show that the Supreme Court of Virginia's adjudication of claim (8) on the merits was either factually or legally unreasonable. As such, this Court RECOMMENDS that claim (8) be denied.

### 10.  Claim (9)

In claim (9) Holmes asserts he was denied equal protection of the law because as a prisoner whose parole was revoked after a 1995 policy change, his GCA credits were rescinded, whereas parole violators whose parole was revoked prior to that change did not have their GCA credits rescinded. Federal Petition, at M33-M34. This claim was presented to the Supreme Court of Virginia as support for Holmes' claim that his GCA credits were computed

32

incorrectly, and that court found the entire claim to be "without merit." <u>Holmes Habeas II</u>, at 1.  As discussed, <u>supra</u>, section III.B.2.d, Holmes' GCA credits were not rescinded when his parole was revoked.  Accordingly, there is no support in the record for this claim.

Based on the foregoing, Holmes has failed to show that the Supreme Court of Virginia's adjudication of claim (9) on the merits was either factually or legally unreasonable.  As such, this Court RECOMMENDS that claim (9) be denied.

### IV. <u>RECOMMENDATION</u>

For the foregoing reasons, the Court, having denied Holmes' request for an evidentiary hearing, recommends that Holmes' petition for a writ of habeas corpus be DENIED, that Respondent's motion to dismiss be GRANTED, and that all of Holmes' claims be DISMISSED WITH PREJUDICE.

Holmes has failed to demonstrate "a substantial showing of the denial of a constitutional right."  Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003).

### V. <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve upon the other party and file with the

Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, <u>see</u> 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.  A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof.  <u>See</u> Fed. R. Civ. P. 72(b).

2.  A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

<div style="text-align: right;">

_____/s/_____

F. Bradford Stillman
United States Magistrate Judge

</div>

Norfolk, Virginia

August 8, 2006

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report and Recommendation was mailed

this date to the following:

Sherlocke Evan F. Holmes, #147832
Powhatan Correctional Center
State Farm, Virginia 23160
PRO SE

Richard C. Vorhis, Esq.
Assistant Attorney General
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219


Fernando Galindo,
Acting Clerk of Court


By: _____
Deputy Clerk

August    , 2006

35